**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Louise Kimbell,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-04113-PHX-SPL<br><br>**ORDER** |

At issue is the denial of Plaintiff Sarah Kimbell's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14, Def. Br.), and Plaintiff's Reply Brief (Doc. 15, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 9, R.) and now affirms the Administrative Law Judge's (ALJ) decision (R. at 14–34) as upheld by the Appeals Council (R. at 1–8).

**I.     BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on September 18, 2014 for a period of disability beginning on March 11, 2010. (R. at 17.) Her claim was denied initially on January 7, 2015, and upon reconsideration on April 7, 2015. (R. at 17.) Plaintiff appeared before the ALJ for a hearing regarding her claim. (R. at 17.) On

November 24, 2017, the ALJ denied Plaintiff's claim, and on September 26, 2018, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1, 14.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: migraines, fibromyalgia, asthma, carpal tunnel syndrome, and chronic fatigue syndrome. (R. at 20.) The ALJ also determined that Plaintiff has two nonsevere impairments: anxiety and a cognitive disorder. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 26.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 22.) The ALJ found that Plaintiff has the residual functional capacity (RFC) to "push, pull, lift and carry 20 pounds occasionally and lift and carry 10 pounds frequently. She can sit, stand and walk for six hours of an eight-hour day, and can handle items frequently with her right hand. She is limited to frequent right fingering, handling and gripping. The claimant can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes or scaffolds, and she can never work at unprotected heights, in dusts, odors, fumes and pulmonary irritants. She must avoid concentrated exposure to extreme temperature changes for either cold or heat." (R. at 22.) Accordingly, the ALJ found that Plaintiff can perform her "past relevant work as a physician assistant, clinical instructor, office manager, or a medical assistant." (R. at 26.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based

on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity (RFC) and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff raises three arguments for the Court's consideration. (Pl. Br. at 1.) First Plaintiff argues that the ALJ improperly found that Plaintiff's mental impairments are nonsevere. (R. at 14.) Second, Plaintiff argues that the ALJ improperly evaluated the opinions of (1) Dr. Gentry, Plaintiff's treating physician, (2) Richard Randall, P.T., and (3) Jeff Tucker, therapist. (Pl. Br. at 18–22.) Finally, Plaintiff argues that the ALJ presented an incomplete hypothetical to the vocational expert. (Pl. Br. at 23.) The Court disagrees with each of Plaintiff's arguments.

### A. The ALJ did not err by finding that Plaintiff's mental impairments—anxiety and a cognitive disorder—are nonsevere.

An ALJ can find that an impairment or combination of impairments is nonsevere only if it has "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Only one severe impairment is required for a claimant to survive the step-two severe impairment analysis. *Id*. The ALJ must consider all a claimant's medically determinable impairments when calculating her RFC, regardless of whether they are severe. *Id*.; 20 C.F.R. § 404.1523. Consequently, an ALJ's errant failure to treat an impairment as severe is typically harmless if the claimant survives step-two and the ALJ considers all the claimant's medical impairments, severe or otherwise. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). An ALJ's step-two determination will be upheld when substantial evidence supports her finding that a claimant's impairment is nonsevere. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

There are unique considerations when a claimant alleges that a mental impairment is severe. The ALJ rates a claimant's degree of functional limitation in four broad functional areas to determine whether her mental impairments are severe. 20 C.F.R. § 404.1520a(c). The functional areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the level of impairment on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(3). If the ALJ

finds that the degree of limitation is only mild in each functional area, then she will generally find that the claimant's mental impairment is nonsevere. 20 C.F.R. § 404.1520a(d)(1).

Here, there is substantial evidence to support the ALJ's finding that Plaintiff's mental impairments are nonsevere. Even if the ALJ had erred at step-two, the error would be harmless because the ALJ considered Plaintiff's mental impairments when calculating Plaintiff's RFC.

Plaintiff's primary argument concerns the ALJ's weighing of the evidence related to Plaintiff's mental impairments. (Pl. Br. at 14–17.) Plaintiff argues that there is objective evidence in the record that she experienced cognitive decline and symptoms consistent with early dementia and possible depressive disorders. (Pl. Br. at 16–17.) Plaintiff also states that the ALJ noted that Plaintiff experienced some cognitive difficulties. (Pl. Br. at 15.)

Plaintiff is correct that the record evidences some cognitive impairment, but her arguments miss the mark. This is because the ALJ found only that Plaintiff's mental impairments are nonsevere, not that they are nonexistent. (R. at 20.) Thus, Plaintiff's argument is not that the ALJ did not consider her mental impairments, but that the ALJ did not correctly weigh their disabling effect. However, the ALJ's consideration of Plaintiff's mental impairments is supported by substantial evidence. Accordingly, the Court defers to the ALJ's determination. *See Thomas*, 278 F.3d at 954.

The ALJ found that Plaintiff has only a mild limitation in each of the four functional areas. (R. at 20–21.) The ALJ relied primarily on the findings of a September 2014 neuropsychological assessment performed by Michael Whetstone, Ph.D. (R. at 20–21.) Dr. Whetstone had previously assessed Plaintiff in October 2011. (R. at 502.) In September 2014 Plaintiff experienced some decline in working memory and attention, but she also experienced an increase in her processing speed. Ultimately, Dr. Whetstone found, and the ALJ concurred, that Plaintiff's neuropsychological abilities in 2014 were largely consistent

with her abilities in 2011.[12] (R. at 20, 21, 1135, 1136.) These findings and Plaintiff's activities of daily living, including her frequent travel abroad, support the ALJ's finding that Plaintiff's mental impairments are nonsevere. (R. at 20–21.)

Finally, even if the ALJ had erred by not finding that Plaintiff's mental impairments are severe, such error would be harmless. The ALJ specifically noted that Plaintiff's "residual functional capacity assessment reflects the degree of limitation" found in the analysis of Plaintiff's functional limitations due to her mental impairments. (R. at 21.) Therefore, regardless of whether Plaintiff's mental impairments were properly considered nonsevere, they were incorporated into her RFC. Accordingly, there is no reversible error in the ALJ's step-two analysis.

> **B. The ALJ did not err in rejecting the opinions of Plaintiff's treating physician and therapists.**

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as 'it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the record].'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)(2)). If a treating physician's opinion is not given controlling weight, then the ALJ must consider

---

[1] Plaintiff correctly notes that Dr. Whetstone diagnosed Plaintiff with a Cognitive Disorder Not Otherwise Specified. (R. at 15, 1136.) However, the diagnosis of a mentally determinable impairment does not necessarily mean the impairment is severe. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The level of functional impairment determines whether an impairment is severe, and substantial evidence supports the ALJ's finding that the limitations found by Dr. Whetstone do not support the classification of Plaintiff's mental impairments as severe.

[2] Dr. Whetstone also found that Plaintiff has "no indication of psychopathology, and no ongoing indication of anxiety disorder." (R. at 1136.)

the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)–(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion without "setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Treating physical therapists are considered "other sources" and are generally not afforded the same weight as treating physicians under the regulations. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). To reject a treating physical therapist's opinion the ALJ must provide germane reasons that are substantiated by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 1. The ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting Dr. Gentry's opinion.

Dr. Gentry opined that Plaintiff had various severe limitations due to her impairments. Dr. Gentry identified various diagnoses including general muscle weakness, chronic fatigue, and cognitive deficits. (R. at 937.) Dr. Gentry supported the diagnoses with clinical findings that Plaintiff was unable to sustain prolonged sitting, uses a recliner while waiting, sits crossed-legged during exams, cannot stand well during appointments, and has below average hard grip weakness. (R. at 937.) She also attached a functional capacity evaluation, GI study, thyroid study, and a 2014 neuropsychological evaluation. (R. at 937.) These findings led Dr. Gentry to conclude that Plaintiff "is severely physically impaired . . . [i]f she were to work she would be unable to complete a work shift, would not be able to drive herself home and would be incapacitated the remainder of [the] day and for days afterwards." (R. at 941.)

Because Dr. Gentry is Plaintiff's treating physician, the ALJ must offer specific and legitimate reasons supported by substantial evidence to reject the opinion. *Murray*, 722 F.2d at 502. The ALJ gave little weight to Dr. Gentry's opinion for three reasons. First, there was no objective evidence supporting the opinion. (R. at 25.) Second, the opinion was based primarily on Plaintiff's subjective complaints. (R. at 25.) Finally, the opinion

was inconsistent with Plaintiff's activities of daily living. (R. at 25.) Each of these reasons is specific, legitimate, and supported by substantial evidence.

Dr. Gentry's opinion is largely unsupported and inconsistent with the rest of the record. Such a reason is sufficient to reject a treating physician's opinion. 20 C.F.R. § 404.1527(c)(3). The ALJ identified various evidentiary deficits that undermined the severe limitations that Dr. Gentry opined to. For example, the ALJ noted that extensive blood testing and multiple electromyograms had been unrevealing and normal. (R. at 23.) Plaintiff's muscle biopsy revealed only atrophy, her genetic testing for a channelopathy was normal, and three MRI studies of her brain and spine were normal. (R. at 23.) A PET scan revealed a decreased metabolism in her brain consistent with possible early dementia or depression, but she was not diagnosed with either. (R. at 794, 1138.) The ALJ cited to other records that indicate that Plaintiff has symptoms that are not debilitating. (R. at 23, 122, 494, 659, 780, 792, 1157.)

Furthermore, in November 2014, Dr. Dale Haverstick found Plaintiff's claimed incapacity inconsistent with her travel to Portugal and Mexico and her ability to "get up from a chair without any apparent difficulty, step over to her motorized trike and then raise her leg and straddle the trike with no difficulty or special effort at all. In fact, Plaintiff was conversing with [Dr. Haverstick] while she did these things." (R. at 681.) Ultimately, the record supports the ALJ's finding that Dr. Gentry's opinion is unsupported and contradicted by the record.

Substantial evidence also supports the ALJ's finding that Dr. Gentry's opinion was largely based on Plaintiff's subjective complaints rather than objective findings. This is a specific and legitimate reason to reject a treating physician's opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001). As discussed above, Dr. Gentry's opinion was unsupported by objective findings and contradicted by the rest of the medical evidence.

Finally, Plaintiff's activities of daily living were inconsistent with the limitations opined to by Dr. Gentry. This reason is also sufficient to reject a treating physician's opinion. *See Ghanim*, 763 F.3d at 1162. The ALJ specifically noted that Plaintiff's

relatively frequent travel abroad was inconsistent with her alleged near-complete incapacitation.³ (R. at 24.) Accordingly, the ALJ did not err in rejecting Dr. Gentry's opinion.

### 2. The ALJ did not err by rejecting the opinions of Plaintiff's therapists.

Richard Randall, P.T., evaluated Plaintiff's functional capacities and testified on her behalf at the hearing before the ALJ. (R. at 24.) Randall concluded that "to a reasonable degree of medical probability, Ms. Kimbell would be physically unable to perform a job description at the sedentary work level on a full-time basis." (R. at 1021.) Randall based his opinion on Plaintiff's medical records, his observations, and Plaintiff's performance on a series of tests consisting of physical activities. (R. at 1021–30.) Therapist Jeff Tucker also performed a functional test for consideration of whether Plaintiff is disabled. (R. at 1119.) Plaintiff demonstrated weakness, mild limitations in strength, but a normal range of motion. (R. at 1119–21.)

Because Plaintiff's therapists are considered "other medical sources" the ALJ needs only germane reasons supported by substantial evidence to reject their opinions. *See Molina*, 674 F.3d at 1111. The ALJ gave germane reasons to reject Randall's opinion. And although it was error for the ALJ to not discuss Tucker's opinion, the error was harmless.

The ALJ rejected Randall's opinion because the severe limitations he opined to were inconsistent with the rest of the medical evidence. (R. at 24.) Furthermore, Randall's opinion and testimony are inconsistent with Plaintiff's activities of daily living, especially her relatively frequent travel abroad. Both reasons are germane and substantiated by the

---

³ Plaintiff argues that Defendant attempts to improperly rationalize the ALJ's opinion post-hoc using evidence that the ALJ did not rely on. (Reply at. 4–5.) Plaintiff argues that the ALJ did not specifically rely on Plaintiff's activities of daily living in rejecting Dr. Gentry's opinion because she did not specifically reference that evidence in the same section of her opinion where she discussed Dr. Gentry's opinion. Plaintiff is incorrect. The ALJ is not required to methodically cite each item of evidence that she relies on in every section of her opinion where she relies upon it. Where a reasonable inference may be drawn that the ALJ relied on evidence she cites to in a different section, the Court is permitted to draw it. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

record. As discussed in previous sections, the medical record is largely inconsistent with Plaintiff experiencing persistent and severe functional limitations. Therefore, the ALJ properly rejected Randall's opinion that Plaintiff could not perform even sedentary work on a full-time basis.

As for Tucker, the ALJ erred because she did not discuss the functional limitations he opined to. Nevertheless, that error is harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (stating that an error is harmless when it does not negate the ALJ's conclusion). Tucker's opinion does not radically alter the picture that emerges from the evidence that the ALJ explicitly considered. Tucker opined that Plaintiff was experiencing some weakness and fatigue, but his findings were relatively benign. (R. at 1119–21.) These findings do not seriously undermine the ALJ's evaluation of the other medical opinions and evidence. Therefore, his opinion does not negate the validity of the ALJ's ultimate nondisability determination and the ALJ did not err by disregarding it.

### C. The ALJ did not give an incomplete hypothetical to the vocational expert.

Hypothetical questions posed to a vocational expert must contain all of a claimant's limitations that are supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Moreover, an ALJ must include only those limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006)

Here, Plaintiff's argument hinges on her prevailing on her first two arguments. However, as discussed above, the ALJ did not err by finding that Plaintiff's mental impairments were nonsevere, nor did the ALJ err by rejecting any medical opinions. Consequently, the ALJ's residual functional capacity calculation did contain all of Plaintiff's functional limitations that are supported by substantial evidence. Therefore, the ALJ did not err.

**IT IS THEREFORE ORDERED** affirming the November 24, 2017 decision of the Administrative Law Judge, (R. at 14–34), as upheld by the Appeals Council on September 26, 2018 (R. at 1–8).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 3rd day of December, 2019.

Honorable Steven P. Logan
United States District Judge